U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

SEP 06 2016

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 16-CR-00034-JL |
| ) | |
| JOEL TETTEH ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Emily Gray Rice, the United States Attorney for the District of New Hampshire, and the defendant, Joel Tetteh, and the defendant's attorney, Paul Garrity, Esquire, enter into the following Plea Agreement:

1. **The Plea and The Offense.**

The defendant agrees to plead guilty to Counts One through Nine of the Indictment. Counts One, Four, and Seven charge him with Making a Material False Statement During the Acquisition of a Firearm, in violation of 18 U.S.C. § 922(a)(6). Counts Two, Five, and Eight charge him with Making a False Statement During the Purchase of a Firearm, in violation of 18 U.S.C. § 924(a)(1)(A). Counts Three, Six, and Nine charge him with Smuggling Goods from the United States, in violation of 18 U.S.C. § 554(a).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in paragraph 6 of this agreement.

2. **The Statute and Elements of the Offense.**

**Material False Statement in Acquisition of Firearms (Count 1, 4, and 7)**

Title 18, United States Code, Section 922(a)(6) provides that it is unlawful:

1

> for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

18 U.S.C. § 922(a)(6).

The elements of the offense are:

First, the defendant knowingly made a false oral or written statement, or furnished or exhibited any false, fictitious or misrepresented identification, to a federally licensed firearms dealer;

Second, the false statement or misrepresented identification was made in connection with the acquisition or attempted acquisition of a firearm; and

Third, the statement was intended or likely to deceive such firearms dealer with respect to a fact material to the lawfulness of the sale of the firearm to the defendant.

*Id.; United States v. Whitney*, 524 F.3d. 134, 138 (1st Cir. 2008).

**False Statement During Firearms Purchase (Counts 2, 5, and 8)**

Title 18, United States Code, Section 924(a) states that whoever

> knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter

is guilty of a felony offense.

18 U.S.C. § 924(a)(1)(A).

The elements of this offense are:

2

First, that the defendant knowingly made a false statement or representation;

Second, the defendant made the statement or representation to a licensed dealer, importer, manufacturer or collector of firearms, within the meaning of Chapter 44, Title 18, United States Code; and

Third, the statement pertained to information that the law requires the licensed dealer, importer, manufacturer or collector to keep.

18 U.S.C. § 924(a)(1)(A).

**Smuggling Goods from the United States (Counts 3, 6, and 9)**

Title 18, United States Code, Section 554(a) provides:

Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States,

is guilty of a felony offense.

18 U.S.C. § 554(a).

The elements of the offense of purchasing items with the intent to export them unlawfully are:

First, the defendant knowingly or fraudulently received, concealed, bought, sold or in any matter facilitated the transportation, concealment or sale of merchandise as described in the indictment;

Second, that the defendant knew the items were intended for exportation;

3

Third, the defendant's exportation or sending was contrary to a federal law or regulation; and

Fourth, the defendant knew the exportation or sending of the merchandise was contrary to law or regulation.
Adapted from Fifth Circuit Pattern Crim. Jury Instr. 2.26 (2015).

3. **Offense Conduct**.

The defendant stipulates and agrees that if this case proceeded to trial, the government would prove the following facts beyond a reasonable doubt:

On or about April 29, 2014, the defendant purchased two handguns from Riley's Sports Shop ("Riley's") a federally licensed firearms dealer ("FFL") located in Hooksett, New Hampshire. Specifically, the defendant purchased: (1) a Ruger, model SR45, .45 caliber pistol, with serial number 380-37031; and (2) a FNH USA, LLC., model FNX-45 Tactical, .45 caliber, pistol, with serial number FX3U019004.

On or about October 29, 2014, the defendant bought another handgun, a Sig Sauer, model P229, .40 caliber pistol with serial number 55B002976 at Riley's.

On or about May 6, 2015, the defendant purchased three additional handguns from Riley's, specifically: (1) a Ruger, model SR45, .45 caliber pistol with serial number 380-41788; (2) a Ruger, model SR40, .40 caliber pistol with serial number 342-88830; and (3) a Stoeger, model Cougar 8000, 9mm pistol with serial number T6429-14B00612.

Individuals who purchase firearms from an FFL such as Riley's are required to complete a Bureau of Alcohol, Tobacco, Firearms, and Explosives Form 4473, Firearms Transaction Record, which is the official firearm transaction record for intrastate, over-the-counter sales that FFLs are required to maintain. Form 4473 requires the purchaser of a firearm to, among other

things, identify himself and his address, his place of birth and his state of residency. Form 4473 also contains a notification that it is illegal to purchase firearms for others. On the first page of the form, the buyer is asked: "Are you the actual transferee/buyer of the firearm?" That question is then followed by a warning in bold print that states "You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you." The Form also refers the purchaser to instructions for answering the question, which include simple examples of permissible and impermissible transactions. Finally, the purchaser's certification, which must be documented by his signature, explicitly states that falsely answering "yes" to the "actual buyer" question is a felony offense.

Form 4473 also contains a statement that reads:

Exportation of Firearms: The State or Commerce Departments may require you to obtain a license prior to export.

An individual executing the Form 4473 certifies that the information contained is accurate and acknowledges that making a false statement on the form is a violation of federal law. Under federal law, it is unlawful for an FFL to sell or deliver a handgun to any person who the licensee knows or has reasonable cause to believe does not reside in the state in which the place of business is located. It also is unlawful for an FFL to sell or deliver a firearm to any person unless the FFL keeps a record of the place of residence of the individual. Thus, an FFL in New Hampshire may not lawfully sell handguns to an individual if he is not a resident of New Hampshire and if the FFL did not keep a record the purchaser's place of residence.

On each of the ATF Forms 4473 that were completed and signed by the defendant during the above-described firearm transactions, the defendant claimed to reside on Jo Ellen Drive in

5

Merrimack, New Hampshire. Further, the defendant claimed to be the actual buyer of the firearms.

On July 10, 2015, an agent checked the residence on Jo Ellen Drive in Merrimack, New Hampshire and found that it was vacant. Investigators later located the owner of the building who stated that the residence was a rental property and that the defendant had never resided at that address. Investigators subsequently interviewed a former tenant, who admitted that he had allowed the defendant to use the address to register a vehicle for insurance. However, the former tenant stated that the defendant had not actually resided at the Merrimack address, but actually lived in Worcester, Massachusetts.

A review of the defendant's travel records showed that he left the United States for an extended period of time after each firearms purchase.

On September 25, 2015, the defendant flew into Boston Logan International Airport. He had departed from Ghana and then traveled to the United States via London. During an inspection by Customs and Border Protection ("CBP"), the defendant was found to be in possession two high capacity pistol magazines. The defendant also had $14,080 concealed in his underwear, which he had not declared on a customs declaration. During the course of his interaction with CBP, the defendant acknowledged that he resided in Worcester, Massachusetts.

At the time of his entry into the United States, the defendant had three cellular telephones in his custody, which were seized by law enforcement agents. After obtaining search warrants for the contents of the telephones, agents located multiple text messages related to firearms and prices for firearms. For example, on November 11, 2014, text messages show that the defendant sent a photograph of the firearm that he had purchased on October 29, 2014. After sending the

6

photograph, the defendant engaged in lengthy text exchange with an individual in Ghana and discussed arrangements to sell the firearm to the individual in Ghana.

On or about December 17, 2015, the defendant met with a law enforcement agent to discuss the prior money seizure. Agents then asked to speak with him further and recorded the conversation. The defendant denied owning any guns in the United States. Upon being shown copies of the 4473 Forms, the defendant acknowledged that he purchased the guns on the forms, but indicated that the guns were not in the United States, but were in Ghana. Although he initially claimed that the guns were for his personal use, he later admitted that he had obtained firearms on behalf of individuals in Ghana, who provided him with money to purchase the firearms in the United States.

The defendant admitted that he put the firearms he had purchased inside used vehicles that he shipped back to Ghana. The defendant admitted that the guns were placed in vehicles or in barrels and that the vehicles and barrels were then stuffed with other smaller items like car parts. The defendant also admitted that he never listed firearms on the bills of lading he was required to complete for the shipping company.

The defendant initially denied that anyone else had ever purchased firearms for him in the United States which he had then taken to Ghana. However, he later admitted that a friend had purchased a Stoeger pistol and Beretta pistol in New Hampshire. The defendant admitted that he provided money to the other individual to purchase the guns, one of which was for the friend's personal use and one of which was for the defendant. These guns also were brought to Ghana. A subsequent investigation located records indicating that this transaction took place at Riley's on October 17, 2012.

7

The defendant acknowledged using the Merrimack address on the 4473 Forms when he purchased firearms at Riley's and acknowledged that he did not live at that address. He also admitted that he did not possess a license to export firearms. The firearms that the defendant purchased are defense articles that may not be exported without a license from the State Department. The State Department did not issue such a license to the defendant.

4. **Penalties, Special Assessment and Restitution.**

The defendant understands that the penalties for Counts One, Three, Four, Six, Seven, and Nine are:

A. A maximum prison term of ten (10) years;

B. A maximum fine of $250,000.00 (21 U.S.C. § 3571); and

C. A term of supervised release of not more than three years. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. § 3583).

The defendant understands that the penalties for Counts Two, Five, and Eight are:

A. A maximum prison term of five (5) years;

B. A maximum fine of $250,000.00 (21 U.S.C. § 3571); and

C. A term of supervised release of not more than three years. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. § 3583).

The defendant also understands that he will be required to pay a special assessment of $900, $100 for each count of conviction, at or before the time of sentencing; and that the Court may order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or §

8

3663A.

5. **Sentencing and Application of the Sentencing Guidelines**.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

- A. Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

- B. Respond to questions from the Court;

- C. Correct any inaccuracies in the pre-sentence report;

- D. Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. **Sentencing Stipulations and Agreements.**

Pursuant to Fed. R. Crim. 11(c)(1)(C), the parties agree to the following specific offense characteristics under the advisory Sentencing Guidelines:

9

    A. The defendant's base offense level for the smuggling offense is 26 under U.S.S.G. § 2M5.2.

    B. The base offense level for the firearm offenses is 12 under U.S.S.G. § 2K2.1(a)(7).

    C. The offense level should be increased by four levels because the offenses involved eight or more weapons under U.S.S.G. § 2K2.1(b)(1)(D).

    D. The defendant should receive a four-level enhancement under U.S.S.G. § 2K2.1(b)(6) because he intended to transfer firearms outside the United States.

The parties intend the above stipulations to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty pleas.

The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

    7. **<u>Acceptance of Responsibility</u>.**

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of

responsibility if the defendant:

    A.    Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

    B.    Challenges the United States' offer of proof at any time after the plea is entered;

    C.    Denies involvement in the offense;

    D.    Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

    E.    Fails to give complete and accurate information about his financial status to the Probation Office;

    F.    Obstructs or attempts to obstruct justice, prior to sentencing;

    G.    Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

    H.    Fails to appear in court as required;

    I.    After signing this Plea Agreement, engages in additional criminal conduct; or

    J.    Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States

of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8. **Waiver of Trial Rights and Consequences of Plea.**

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A. To plead not guilty or to maintain that plea if it has already been made;

B. To be tried by a jury and, at that trial, to the assistance of counsel;

C. To confront and cross-examine witnesses;

D. Not to be compelled to provide testimony that may incriminate him; and

E. To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. **Acknowledgment of Guilt; Voluntariness of Plea.**

The defendant understands and acknowledges that he:

A.  Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.  Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

C.  Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.  Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.  Is completely satisfied with the representation and advice received from his undersigned attorney.

10. **Scope of Agreement.**

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. **Collateral Consequences.**

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms. The defendant also understands that if he is not a citizen of the United States, he may be removed from the United

13

States, denied citizenship, and denied admission to the United States in the future as a consequence of his conviction.

12. **Satisfaction of Federal Criminal Liability; Breach.**

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13. **Waivers.**

A. **Appeal.**

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1. His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motions or any other adverse disposition of pretrial motions or issues; and

2. All aspects of the sentence imposed by the Court if within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

14

### B. Collateral Review

The defendants understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motions or any other adverse disposition of pretrial motions or issues; and

2. All aspects of the sentence imposed by the Court if it falls within, or lower than, the guideline range as determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waive of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

### C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

15

### D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant to pursue an appeal s authorized by law.

14. **No Other Promises**.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16. **Agreement Provisions Not Severable.**

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

EMILY GRAY RICE
United States Attorney

Date: 7/6/16

By: _____
John J. Farley
Assistant U.S. Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
(603) 225-1552
John.Farley@usdoj.gov

The defendant, Joel Tetteh, certifies that he has read this 17-page Plea Agreement and that he fully understands and accepts its terms.

Date: 9/1/2016

_____
Joel Tetteh, Defendant

I have read and explained this 17-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 9/1/16

_____
Paul Garrity, Esquire
Attorney for Joel Tetteh

17